THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| YADAN ZHANG,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPOSE PLATFORM MANAGEMENT, LLC, TRANG NGUYEN, and YEN "TIFFANY" VUONG,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [60][63] DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 2:23-cv-00475-DBB-CMR<br><br>District Judge David Barlow |

Before the court are Defendant Transpose Platform Management, LLC's[1] ("Transpose") and Defendant Trang Nguyen's[2] motions to dismiss Plaintiff Yadan Zhang's First Amended Complaint ("Amended Complaint").[3] For the following reasons, the court grants in part and denies in part Defendants' motions.

## BACKGROUND

Ms. Zhang was terminated from her employment with Trusted Insight, Inc. on January 15, 2018.[4] Following her termination, Ms. Zhang filed a lawsuit in New York state court alleging a hostile work environment and retaliation against Trusted Insight, its CEO, Alex Bangash, and Ms. Nguyen.[5] Ms. Zhang alleged that Mr. Bangash made inappropriate sexual advances towards

---

[1] Def. Transpose Platform Management, LLC's Mot. to Dismiss First Am. Compl. and Memorandum in Support ("Transpose Mot."), ECF No. 60.
[2] Def. Trang Nguyen's Mot. to Dismiss All Claims Against Her ("Nguyen's Mot."), ECF No. 63.
[3] First Am. Compl. ("Am. Compl."), ECF No. 59.
[4] *Id.* ¶ 25.
[5] *Id.* ¶¶ 24–26; *see also Zhang v. Trusted Insight, Inc.*, No. 154570/2020, 2022 WL 1664305, at *1–2 (N.Y. Sup. Ct. May 25, 2022).

her, which she rebuffed.[6] Further, Ms. Zhang alleged that Ms. Nguyen was in a relationship with

Mr. Bangash, and that Ms. Nguyen sought to interfere with Ms. Zhang's visa application.[7]

Defendants in the New York case brought a number of counterclaims.[8] The New York court

dismissed nearly all counterclaims, and struck baseless factual allegations—including allegations

of fraud and sexual misconduct—from the record.[9] The parties to the New York case eventually

mediated their dispute, entered into an informal settlement memorialized in a "Term Sheet" on

January 26, 2023, and a final settlement agreement on May 3, 2023.[10] While Ms. Nguyen signed

the Term Sheet, which contained a recital that it was binding, she did not sign the Settlement

Agreement.[11]

In January 2023, Ms. Zhang became employed at Utah's School & Institutional Trust

Fund Office ("SITFO").[12] And at some point prior to April 2023, Ms. Zhang began attending

business school at Brigham Young University.[13] Ms. Zhang alleges that on April 6, 2023, Ms.

Nguyen, under the alias Lisa Chang, sent an email to Ms. Zhang's supervisors at SITFO,

---

[6] Am. Compl. ¶¶ 24–26; *see also Zhang*, 2022 WL 1664305, at *1–2.

[7] Am. Compl. ¶ 27; *see also Zhang*, 2022 WL 1664305, at *1–2.

[8] Am. Compl. ¶ 28; *see also Zhang*, 2022 WL 1664305, at *2 ("Defendants also assert ten counterclaims: fraud; conversion; unjust enrichment; breach of fiduciary duty/faithless servant doctrine; tortious interference with prospective economic advantage, violation of the Computer Fraud and Abuse Act . . .; violation of the Defend Trade Secrets Act . . .; defamation; and intentional infliction of emotional distress.").

[9] Am. Compl. ¶¶ 29–30; *see also Zhang*, 2022 WL 1664305, at *2–3 ("By order dated June 30, 2021, this Court allowed plaintiff to amend her complaint and dismissed nine of the ten counterclaims. Only the fourth counterclaim, breach of fiduciary duty, was not dismissed in its entirety. . . . Plaintiff now moves to strike the counterclaim on the ground that it is prejudicial and unnecessary. . . . Defendants' amended counterclaim contains allegations of fraudulent conduct despite the fact that a counterclaim based in fraud was dismissed by this Court. Their other new allegations, based on plaintiff's sexual conduct and incompetence, also are not relevant with respect to breach of fiduciary duty and are stricken. The original counterclaim, alleging embezzlement and misuse of trade secrets, is preserved.").

[10] Am. Compl. ¶¶ 31–34; Term Sheet, ECF No. 4; Confidential Settlement Agreement and General Release ("Settlement Agreement"), ECF No. 62-1.

[11] Am. Compl. ¶¶ 32–34.

[12] *Id.* ¶ 36.

[13] *Id.* ¶ 35.

repeating a number of "false and disparaging allegations" that were made by defendants in the New York case.[14] This email was sent "days after" Ms. Zhang updated her LinkedIn profile with the information that she was attending Brigham Young University.[15] The April 6 email reads:

> BYU alumni and students would l ke [sic] to notify you of the employment lawsuit filed in New York by Christina Yadan Zhang, a BYU MBA student and employee at SITFO. . . .
>
> According to investigations mentioned in this lawsuit, Christina Zhang forged signatures, and falsified legal documents including offer letters, organization charts, etc [sic] to the United States government and misrepresented her employment status to federal authorities to secure visa fraud. The lawsuit states she was investigated by the firm compliance officer and was terminated for documented and admitted incompetence and unprofessionalism- [sic] frequently drunk at work and harassing employees with graphic sexual encounters with one-night stands or multiple strangers in over hundreds of separate occasions via company electronic communication. The lawsuit mentioned Christina had a personal relationship with the HR personnel and after termination, she secretly taped him at a bar without his authorization and alleged sexual harassment. It also outlined theft of trade secrets and other misconduct that potentially pose many risks to Utah public funds.[16]

The April 6 email contains a link to the New York case's docket.[17]

Next, on June 18, 2023, Defendant Yen Vuong sent identical direct LinkedIn messages containing apparently similar claims to two of Ms. Zhang's supervisors at SITFO.[18] This message reads:

> I would like to share some of the investigative reports with some evidence, and one of many witness testimonials on a SITFO employee Yadan "Christina" Zhang, to alert [sic] some of the matters below. While I am very concerned about potential retaliation from Christina, I feel obligated to share the reports because of the integrity and concern code of ethics in our institutional industry and to protect LP capital. Please keep this confidential from Christina. I believe, [sic] one of

---

[14] *Id.* ¶¶ 37–38.
[15] *Id.* ¶ 35.
[16] April 6 Email, ECF No. 2-2.
[17] Am. Compl. ¶ 37.
[18] *Id.* ¶ 40.

your consultants, Albourne Partners, has conducted ODD on the matter and has access to certain investigative reports regarding Christina Zhang.

I am a former employee and was Christina's replacement as an assistant at Trusted Insight, for which Christina worked from 2015 to 2017 at their NYC office. I overlapped with her in 2017. I participated in many third party investigations including government investigations on Christina [sic] suspected criminal activities as a witness alongside with other former employees and have got access to certain investigative reports as a result.

As evidenced in many independent investigative reports I have seen . . . Christina was terminated for a long history of documented and admitted poor performance as an assistant, harassment of other employees in company electronic communication, frequently intoxicated and discussing inappropriate topics at work, misrepresentation in legal paperwork and other misconduct. Her various inappropriate behavior and misconduct were flagged by the compliance officer throughout her employment.

After Christina ceased performing any work for the firm in August 2017, she forged signatures, fabricated offer letters, organization charts, table of duties, phony work products and various legal documents to the United States government to misrepresent that she was offered, received the training and performed the work of an entry level "investor relations specialist" starting October 1, 2017 to secure visa fraud. In early 2018, after discovering that the compliance investigator and a female executive found Christina submitted fraudulent employment documents to the US government, Christina threatened to harm the executive to cover up the fraudulent activities. She attempted to force the company to continue keeping her on the payroll despite not performing work since August 2017 and prevent the firm from fulfilling its legal obligation by notifying the US government that Christina no longer performed work for the firm. As the firm considered a restraint [sic] order against her, I was instructed to be cautious in setting up meetings safely.

In 2020, in anticipation of her visa renewal, she sent an email threatening Trusted Insight management to alter her record to "investor relations specialist" to match with the fabricated documents she sent to the government stating that she was offered, received training and performed work as an IR specialist starting October 1, 2017 (Her last date of performing any work for the firm was August 9, 2017).[19]

---

[19] June 18 Message to Ryan, ECF No. 2-6; *see also* June 18 Message to Scott, ECF No. 2-5.

Ms. Vuong is an assistant at Transpose Platform Management.[20] Ms. Zhang alleges that Ms. Vuong "reports directly" to Ms. Nguyen, and that she sent the LinkedIn messages "at the direction" of Ms. Nguyen.[21]

Ms. Zhang does not allege that she was terminated from her employment with SITFO. Instead, the only damages alleged are an adverse employment action in 2022—prior to the communications at issue here—"severe emotional distress," and general damage to her reputation and standing at SITFO.[22]

On March 8, 2024, Ms. Zhang filed her Amended Complaint in this case, alleging breach of contract as to Ms. Nguyen, defamation and defamation per se as to all Defendants, tortious interference with economic relations as to all Defendants, retaliation in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as to Ms. Nguyen, and intentional infliction of emotional distress as to Ms. Nguyen and Ms. Vuong.[23] On March 18, 2024, Transpose Platform and Ms. Nguyen filed their motions to dismiss.[24] The motions were fully briefed on April 15, 2024.[25]

---

[20] Am. Compl. ¶ 41.

[21] *Id.* ¶ 44.

[22] *See* Am. Compl. ¶¶ 39, 48.

[23] *Id.* ¶¶ 49–80.

[24] Transpose Mot.; Nguyen Mot. The court initially struck the parties' original motions to dismiss in this case given an apparent lack of subject matter jurisdiction. *See* ECF No. 53. That apparent defect has been cured. *See* Order Granting Pl. Leave to Amend Compl., ECF No. 58; Compl. at 15 (seeking at least $280,000 in damages).

[25] *See* Pl.'s Memorandum of Law in Opp'n to Defendants Transpose Platform Management, LLC's and Trang Nguyen's Mots. to Dismiss Pl.'s First Am. Compl. ("Pl.'s Opp'n"), ECF No. 69; Def. Transpose Platform management, LLC's Reply Memorandum in Support of its Mot. to Dismiss ("Transpose Reply"), ECF No. 76; Def. Trang Nguyen's Reply Memorandum in Support of Her Mot. to Dismiss All Claims against Her ("Nguyen Reply"), ECF No. 74.

**STANDARD**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[28] And while the court accepts as true all the factual allegations of the pleading, it does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[29]

**DISCUSSION**

Transpose and Ms. Nguyen make a variety of arguments in support of dismissal. First, Ms. Nguyen argues that Ms. Zhang released all claims against her in the Term Sheet and Settlement Agreement.[30] Similarly, Transpose argues that Ms. Zhang's defamation claim against it is barred by the two agreements.[31] Second, Ms. Nguyen argues that the Amended Complaint does not allege facts to suggest that either the April email or the June messages can be attributed to her.[32] Likewise, Transpose argues that the Amended Complaint does not allege sufficient facts to support vicarious liability for the statements.[33] Third, both Ms. Nguyen and Transpose argue that Ms. Zhang has failed to allege facts to support each element of her tortious interference

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] Nguyen Mot. 8–12.
[31] Transpose Mot. 8–10.
[32] Nguyen Mot. 12–15.
[33] Transpose Mot. 10–14.

claim.[34] And fourth, Ms. Nguyen argues that the court lacks subject matter jurisdiction over Ms. Zhang's claims arising under New York state and municipal law.[35] The court addresses each in turn.

## I.    Release of Claims

Both Ms. Nguyen and Transpose argue that the Term Sheet and the Settlement Agreement release Ms. Zhang's claims against them because they are intended third-party beneficiaries of the contracts.[36]

At the outset, the parties appear to be in agreement that New York law governs both the Term Sheet and the Settlement Agreement, or that in any event, that there is no conflict between Utah and New York law on any relevant issue.[37] The Settlement Agreement itself has a choice of law clause selecting New York law,[38] and while the Term Sheet itself is silent as to choice of law, it arose from a mediation related to a New York lawsuit which itself arose from New York employment.[39] Thus, for the purposes of this decision, the court will apply New York substantive law.

Neither Transpose nor Ms. Nguyen is a party to the Settlement Agreement, though Ms. Nguyen is a party to the Term Sheet. However, under New York law, a third party may nonetheless enforce that contract when it is clear from the face of the contract that the parties intended to benefit the third party.[40] The Term Sheet reads: "The parties agree to the following:

---

[34] Nguyen Mot. 15–17; Transpose Mot. 14–15.
[35] Nguyen Mot. 18–21.
[36] Transpose Mot. 8–10; Nguyen Mot. 8–12.
[37] *See* Pl.'s Opp'n 17; Nguyen Mot. 8 n.4; Transpose Mot. 9 n.3.
[38] Settlement Agreement ¶ 16.
[39] *See* Compl. ¶¶ 24–33.
[40] *Comm'r of Dept. of Soc. Servs. of N.Y.C. v. N.Y. Presbyterian Hosp.*, 164 A.D.3d 93, 98 (N.Y. App. 2018); *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 459–60 (N.Y. 2018).

. . . Broad mutual release as to all claims, without limitation, any known or unknown causes of

action, from the beginning of time to date of execution of the Agreement."[41] And the release in

the Settlement Agreement reads:

> "Plaintiff . . . hereby irrevocably and unconditionally releases, acquits, waives,
> and forever discharges *Bangash*, his heirs, successors, representatives, assigns,
> agents, executors, trustees, and administrators, and *Trusted Insight* and its present,
> past, and future owners, affiliates, related business entities, parent companies, . . .
> executives, directors, officers, trustees, members, partners, employees, [etc.] in
> their individual and representative capacities, . . . from any and all charges,
> complaints, claims, liabilities, obligations, [and] suits, . . . known or unknown,
> suspected or unsuspected, that Plaintiff had, now has, or in the future may or
> could have, arising out of or relating to any matter up to the Effective Date of this
> Agreement . . . .[42]

In addition, the Settlement Agreement states that "all releasees who are not parties to this

agreement are and shall be third-party beneficiaries of this" Settlement Agreement.[43]

## A. Transpose

Transpose argues that because Mr. Bangash is a party to the Settlement Agreement, it is a

third-party beneficiary because Mr. Bangash founded Transpose.[44] That theory has no basis in

law. The court is not persuaded that it should take judicial notice that Mr. Bangash is a founder

of Transpose at this stage of the case. While it is true that courts are not categorically limited to

the allegations of the complaint when considering a motion to dismiss, and instead may consider

sources of which they can take judicial notice,[45] the court is not persuaded that a company's

website or a LinkedIn profile would meet the standard for judicial notice,[46] as Transpose

---

[41] Term Sheet.
[42] Settlement Agreement ¶ 1.a (emphasis added); *see also id.* ¶ 1.c.
[43] *Id.* at 11 (emphasis removed).
[44] Transpose Mot. 9.
[45] *Hooper v. City of Tulsa*, 71 F.4th 1270, 1279 n.8 (10th Cir. 2023).
[46] Fed. R. Evid. 201(b).

suggests.[47] But in any event, the Settlement Agreement did not contemplate releasing any company Mr. Bangash helped found from any and all liability up until May 3, 2023. Instead, it is limited to Mr. Bangash's "heirs, successors, representatives, assigns, agents, executors, trustees, and administrators."[48] None of those terms encompasses Transpose, and Transpose has made no effort to argue that they do. Therefore, it is not clear from the face of the Settlement Agreement that the parties intended to benefit Transpose.

### B.  Ms. Nguyen

Ms. Nguyen argues that Ms. Zhang released her claims because the Amended Complaint alleges that she is a past Trusted Insight executive, and because paragraph one of the Settlement Agreement contains a release provision designating past executives as third-party beneficiaries.[49] Ms. Zhang argues that by contrast, the release provision does not clearly evidence an intent to benefit Ms. Nguyen because elsewhere the parties included express language designating Ms. Nguyen as a third-party beneficiary and because Ms. Nguyen could have signed the Settlement Agreement if she wished to, but instead refused.[50] But those facts do not obviate the express language of the release provision itself, which designates Trusted Insight's past officers as third-party beneficiaries of the release obligation.[51] The Amended Complaint alleges that Ms. Nguyen "was an executive of Trusted Insight[.]"[52] Accordingly, the release provision covers Ms. Nguyen.[53]

---

[47] *Cf.* Transpose Mot. 9 n.4.
[48] Settlement Agreement at 1.a.
[49] Nguyen Mot. 9; Compl. ¶ 15; *see also* Settlement Agreement ¶¶ 1.a, 11.
[50] Pl.'s Opp'n 15–16.
[51] *See* Settlement Agreement ¶¶ 1.a, 11.
[52] Am. Compl. ¶ 15.
[53] Ms. Nguyen also contends that she is an individually named third-party beneficiary. Because the court already has found that the release provision applies to her, it does not address this argument.

Ms. Zhang argues even if the court holds that Ms. Nguyen was a third-party beneficiary, the release is ineffective as to the conduct complained of here—an intentional tort committed while the alleged tortfeasor believed herself to be immunized from liability.[54] It is true that New York cases have held that exculpatory provisions that purport to exempt parties from future intentional, reckless, or grossly negligent conduct are unenforceable.[55] But as Ms. Nguyen correctly points out, there is a distinction between these exculpatory provisions involving future acts and mere release provisions.[56] Whereas an exculpatory provision may not immunize an actor from liability for future intentional torts,[57] a release provision may release such torts, including unknown torts.[58] Here, the provision "releases" all claims, known or unknown, "arising out of or relating to any matter up to [May 3, 2023.]"[59] Therefore, this was a release provision, not an exculpatory provision; and there is no public policy bar under New York law to parties releasing yet unknown claims.

In sum, Ms. Nguyen is a third-party beneficiary with respect to the release provision, and there is no public policy bar to the court enforcing such provision with respect to the claims at issue here. But only portions of each of the claims in this case are tied to conduct occurring before the execution of the Settlement Agreement. Only the portions of all claims based on the April 6 email are dismissed with respect to Ms. Nguyen.

---

[54] Pl.'s Opp'n 16–17.
[55] *E.g.*, *Matter of Part 60 Put-Back Litig.*, 165 N.E.3d 180, 186–87 (N.Y. 2020); *Lago v. Krollage*, 575 N.E.2d 107, 110 (N.Y. 1991).
[56] Nguyen Reply 11–12.
[57] *See* cases cited *supra* note 55.
[58] *See Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011).
[59] Settlement Agreement ¶¶ 1(a), 1(c); *see also* ¶ 1(e) ("[N]othing herein shall be deemed a waiver of: . . . (ii) claims that may arise based upon events occurring after the Effective Date of this Agreement.").

## II.      Vicarious Liability

Ms. Zhang's claims for breach of contract, defamation, and intentional infliction of emotional distress against Ms. Nguyen must be premised on vicarious liability for the June messages if they are to move forward. Likewise, her defamation claim against Transpose must be premised on vicarious liability for either the April or June messages if it is to survive.

 "Common law rules of agency and respondeat superior" apply to determine whether Ms. Nguyen or Transpose can be held liable for the alleged defamatory statements.[60] The basic question presented under [the doctrine of respondeat superior] is whether to treat the torts of an agent as the acts of the principal."[61] This requires first that there be an agency relationship, and second, that the agent be acting within the scope of the relationship.[62] Two factors are relevant to the inquiry whether an agent acts within the scope of the agency relationship: whether the conduct is of the general type the agent is employed to perform and whether the agent is at least partly motivated to serve the principal.[63]

### A.  Ms. Nguyen's Responsibility for the Statements

Ms. Nguyen argues that the Amended Complaint does not plausibly allege that she was responsible for either the April or June messages.[64] Since the court has already determined that Ms. Zhang released her defamation claim based on the April message as to Ms. Nguyen, it need not address that issue further here. Therefore, the court considers only whether the Amended

---

[60] *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991).
[61] *M.J. v. Wisan*, 2016 UT 13, ¶ 50, 371 P.3d 21.
[62] *See id.* ¶ 52.
[63] *Id.* ¶¶ 54, 59.
[64] Nguyen Mot. 12–14.

Complaint plausibly alleges that Ms. Nguyen was responsible for Ms. Vuong sending the June messages.

The Amended Complaint alleges that Ms. Vuong is an executive assistant at Transpose, and that she reports directly to Ms. Nguyen.[65] The Amended Complaint then alleges that Ms. Vuong sent the June 18 messages "at the direction of [Ms.] Nguyen."[66] In addition, the Amended Complaint alleges that Ms. Nguyen engaged in a previous pattern of retaliatory conduct because she "was jealous and upset about the interest that Mr. Bangash was showing towards" Ms. Zhang.[67] And indeed, Ms. Nguyen was party to a previous lawsuit involving Ms. Zhang from which many of the statements in the June 18 messages are derived.[68]

Contrary to Ms. Nguyen's arguments, these allegations are not merely "conclusory and formalistic."[69] In addition to the allegation that Ms. Nguyen directed Ms. Vuong to send the messages, the Amended Complaint alleges a history of personal animosity and that Ms. Nguyen had power over Ms. Vuong. The allegations of the Amended Complaint, taken as a whole, permit a reasonable inference that Ms. Nguyen directed Ms. Vuong to send the June 18 messages and that Ms. Vuong sent the messages at Ms. Nguyen's direction. In other words, the Amended Complaint sufficiently alleges both elements of respondeat superior liability. Thus, the court does not dismiss the portions of Ms. Zhang's claims against Ms. Nguyen for breach of contract, defamation, and intentional infliction of emotional distress based on the June messages.

---

[65] Am. Compl. ¶¶ 22, 44.
[66] *Id.* ¶ 44; *see id.* ¶ 45.
[67] *Id.* ¶ 26.
[68] *See id.* ¶ 28; *see also* Compl., *Zhang v. Trusted Insight, Inc.*, No. 154570/2020 (N.Y. Sup. Ct. June 22, 2020).
[69] *Cf.* Nguyen Mot. 14.

**B. Transpose's Vicarious Liability for Defamation Claim**

Transpose argues that the Amended Complaint does not allege facts that would support its liability for either the April or June messages.[70]

With respect to the April message, the court must first determine whether the Amended Complaint plausibly alleges that Ms. Nguyen sent the message under the alias "Lisa Chang." The Amended Complaint alleges that Ms. Nguyen had a motive to engage in retaliatory conduct towards Ms. Zhang and had done so before.[71] In addition, the April and June messages contain a number of similarities in terms of tone, content, and syntax. For example, both sets of messages are framed as merely an offer of helpful information. Likewise, both sets of messages reference "investigative reports" described in the New York lawsuit, and recite a similar list of bad conduct. Finally, both sets of messages include atypical or ungrammatical phrases, such as "to secure visa fraud." Viewing these factual allegations and the reasonable inferences therefrom in the light most favorable to the non-moving party, it is plausible that the April and June messages were sent by the same individual. And since the Amended Complaint alleges that Ms. Vuong sent the June messages at the direction of Ms. Nguyen—which the court has already found to be plausible—it is also plausible that Ms. Nguyen sent or directed to be sent the April message.

Accordingly, the court turns to whether the Amended Complaint plausibly alleges respondeat superior liability for the April email with respect to Transpose. First, Ms. Nguyen is alleged to be "a Co-Founder and Member of the General Partner of Transpose[.]"[72] Ms. Zhang argues that this allegation does not mean that Ms. Nguyen is a member of an unrelated legal

---

[70] Transpose Mot. 10–14.
[71] *See* Am. Compl. ¶¶ 26–28.
[72] Am. Compl. ¶ 14.

entity.[73] On reply, Transpose provides SEC filings that it argues prove that Ms. Nguyen is a member of its general partner.[74] Notwithstanding these arguments, the court finds that it only must reach the second element of the respondeat superior test. There is nothing in the Amended Complaint or the message itself to suggest that Ms. Nguyen was acting within her job responsibilities or with a desire to serve Transpose in sending the April message. To the contrary, the Amended Complaint details Ms. Nguyen's *personal* animosity for Ms. Zhang. Indeed, Ms. Zhang makes no argument to suggest that Ms. Nguyen was acting within the scope of her agency relationship in sending the April email.[75]

Turning then to the June messages, Transpose argues that the allegations "do not establish that Ms. Vuong was acting [as] Transpose's agent" in sending the messages.[76] Ms. Zhang argues that the Amended Complaint adequately alleges both elements of respondeat superior with respect to Ms. Vuong's relationship with Transpose.[77] Indeed, the Amended Complaint alleges that Ms. Vuong was employed by Transpose at the time relevant to the June 18 messages.[78] This allegation is sufficient to allege an agency relationship between Ms. Vuong and Transpose. Further, the June 18 message itself suggests that Ms. Vuong sent the message

---

[73] Pl.'s Opp'n 22.
[74] Transpose Reply 4–5; *see also* U.S. SEC, *Investment Adviser Public Disclosure, Form ADV: Uniform Application for Investment Adviser Registration*, *Transpose Platform Management, LLC Schedule A,* https://files.adviserinfo.sec.gov/IAPD/content/viewform/adv/Sections/iapd_AdvScheduleASection.aspx?ORG_PK= 287674&FLNG_PK=00ABDF42000801D903400FD104FBF525056C8CC0 [https://perma.cc/8462-TM7T]; U.S. SEC, *Investment Adviser Public Disclosure, Form ADV: Uniform Application for Investment Adviser Registration*, *Transpose Platform Management Signature Page*, https://files.adviserinfo.sec.gov/IAPD/content/viewform/adv/Sections/iapd_AdvSignatureSection.aspx?ORG_PK=2 87674&FLNG_PK=00ABDF42000801D903400FD104FBF525056C8CC0 [https://perma.cc/4HQJ-GM6K https://perma.cc/4HQJ-GM6K]. These SEC filings, however, list Ms. Nguyen as a control person of Transpose, and post-date the allegations of the Amended Complaint. Therefore, they do not advance Transpose's argument.
[75] *Cf.* Pl.'s Opp'n 21–24.
[76] Transpose Mot. 12.
[77] Pl.'s Opp'n 23–24.
[78] *See* Compl. ¶ 41.

"because of the integrity and certain code of ethics in our institutional industry and to protect LP capital."[79] This is sufficient to allege that Ms. Vuong acted out of a desire to serve Transpose. Contrary to Transpose's arguments,[80] intentional torts are not categorically outside the scope of employment—the inquiry remains whether the agent acted with the purpose of serving the principal.[81] Accordingly, the Amended Complaint adequately alleges respondeat superior liability with respect to Transpose based on the June 18 messages.

### III.    Tortious Interference

The elements of tortious interference under Utah law are: (1) intentional interference with existing or potential economic relations, (2) by improper means, (3) which causes injury to the plaintiff.[82] Transpose and Ms. Nguyen argue that the tortious interference claim should be dismissed because Ms. Zhang fails to allege the improper means and injury elements.[83]

Improper means are acts of interference that are "contrary to statutory, regulatory, or common law" or that violate "an established standard of a trade or profession."[84] Among other things, this includes defamation.[85] Since the court has found that the Amended Complaint plausibly alleges that Ms. Nguyen and Transpose were responsible for the June messages, and since no Defendant challenges that the June messages are sufficiently alleged to be defamatory, the court concludes that this element has been alleged.

---

[79] *Id.* ¶ 42.
[80] *See* Transpose Mot. 13–14; Transpose Reply 8–9.
[81] *See Wisan*, 2016 UT 13, ¶¶ 60–66.
[82] *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 71, 416 P.3d 401.
[83] Nguyen Mot. 15–16; Transpose Mot. 14–15.
[84] *Harvey*, 2017 UT 75, ¶ 71 (quoting *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323).
[85] *Overstock.com, Inc. v. Smart Bargains, Inc.*, 2008 UT 55, ¶ 18, 192 P.3d 858 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991)).

Next, Transpose and Ms. Nguyen argue that Ms. Zhang failed to plausibly allege an injury because the only allegations of injury in the Amended Complaint deal with termination from employment prior to June 2023.[86] Ms. Zhang argues that the Amended Complaint alleges that she suffered "mental anguish and reputational harm."[87] Defendants argue that these kinds of injuries are not contemplated by the tort of tortious interference.[88]

Both parties cite *TruGreen Companies, LLC v. Mower Brothers, Inc.* in support of their arguments.[89] The court is not persuaded that the case is apposite to the question at hand: whether an allegation of mental anguish and reputational harm are sufficient to allege the injury element of tortious interference. In *TruGreen*, the Utah Supreme Court addressed the appropriate way to calculate damages in tortious interference cases dealing with purely pecuniary loss.[90] In her opposition, Ms. Zhang points only to language from another circuit quoted in *TruGreen*.[91] But that citation and parenthetical quote was being used only to illustrate the proposition that "many courts in other jurisdictions have adopted [Restatement (Second) of Torts] section 774A or similar rules."[92] *TruGreen* does not stand for the broader proposition suggested by Ms. Zhang: that Utah law permits recovery for mental and reputational damages standing alone under a tortious interference theory. Indeed, as Defendants suggest, *TruGreen* limited its holding to the appropriate measure of damages in cases of pecuniary loss "and not injury to reputation or mental suffering."[93] However, Defendants also make too much out of *TruGreen*, and go so far as

---

[86] Transpose Mot. 15; Nguyen Mot. 16–17.
[87] Pl.'s Opp'n 24; *see also* Am. Compl. ¶ 48.
[88] Nguyen Reply 14; Transpose Mot. 9–10.
[89] 2008 UT 81, 199 P.3d 929.
[90] *See id.* ¶¶ 21–27.
[91] *See* Pl.'s Opp'n 24.
[92] *TruGreen*, 2008 UT 81, ¶ 22.
[93] *Id.* ¶ 27.

16

to suggest that "*TruGreen* specifically avoided the question of whether mental anguish and reputational harm can be recovered in an interference claim."[94] Not so. *TruGreen* was about the appropriate measure of damages; it simply had nothing to say (by way of avoidance or otherwise) on the predicate question of whether injuries to reputation or mental state were recoverable through the tort of tortious interference.

Neither the Utah Supreme Court nor the Utah Court of Appeals has held that a claim for tortious interference may be based solely on emotional or reputational injuries. And while the Restatement (Second) of Torts suggests that damages for "emotional distress or actual harm to reputation" may be recoverable "if they are reasonably to be expected to result from the interference,"[95] and while some Utah cases have cited with approval the section of the Restatement containing this language,[96] none has gone so far as to hold that the injury requirement can be satisfied solely based on emotional distress or harm to reputation.

Accordingly, the court holds that at the very least, Ms. Zhang must allege pecuniary loss caused by the intentional interference. She has not done so.[97] Ms. Zhang does not allege that a contract was breached or anything of the sort. Reputational and emotional injuries, standing alone, are not properly remedied through tortious interference; rather, they may be properly addressed through Ms. Zhang's defamation claim.

Therefore, because Ms. Zhang has not alleged a cognizable injury, her tortious interference claim is dismissed.

---

[94] Nguyen Reply 13.
[95] Restatement (Second) of Torts § 774A (Am. L. Inst. 1979).
[96] *E.g.*, *Sampson v. Richins*, 770 P.2d 998, 1006–07 (Utah Ct. App. 1989).
[97] *Cf.* Am. Compl. ¶¶ 48, 67–70.

## IV.    New York Human Rights Laws

Both NYSHRL and NYCHRL prohibit retaliation for engaging in certain protected activities, including filing a complaint alleging violations of both laws.[98]

Ms. Nguyen argues that the NYSHRL and NYCHRL cannot reach the conduct complained of because Ms. Zhang was not a resident of the state of New York or New York City and because no impact was felt by Ms. Zhang in either jurisdiction.[99]

Because of the state's and the city's legislative jurisdiction, NYSHRL and NYCHRL can only reach non-residents when the alleged discriminatory conduct had an impact within the state or city.[100] Ms. Zhang argues that because she worked in New York City and because the alleged retaliation is part of an ongoing pattern, the impact requirement is satisfied.[101] But the New York Court of Appeals has strongly suggested that the impact requirement "confines the protections of the NYCHRL [and NYSHRL] to those who are meant to be protected—those who work in the city [or state]."[102] And while it has extended the impact test to cover discrimination against prospective employees who seek to work in the city or state,[103] Ms. Zhang does not cite any cases suggesting that the NYCHRL or NYSHRL apply to a one-time employee within New York City who has since left the state. Ms. Zhang has not alleged any impact within the state of New York or New York City. She does not allege she lives in either place, works in either place, or intends to work in either place. That she was once protected by the NYCHRL and NYSHRL

---

[98] N.Y. Exec. § 296(7); N.Y. City Admin. Code § 8-107(7). Ms. Zhang's New York lawsuit involved claims for discrimination in violation of both the statute and ordinance. *See* Compl. ¶¶ 46–52, 64–70, *Zhang v. Trusted Insight, Inc.*, No. 154570/2020 (N.Y. Sup. Ct. June 22, 2020).
[99] Nguyen Mot. 18–21.
[100] *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 746–47, 748 (N.Y. 2010).
[101] Pl.'s Opp'n 17–19.
[102] *Hoffman*, 933 N.E.2d at 747.
[103] *Syeed v. Bloomberg L.P.*, --- N.E.3d ---, 2024 WL 1097279 (N.Y. 2024).

18

does not mean that she retains those protections after moving to Utah, even when the conduct alleged to be in violation of the laws was part of an ongoing pattern of activity.

Accordingly, the court dismisses Ms. Zhang's claims based on the NYSHRL and NYCHRL.

## ORDER

For the forgoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.[104] Ms. Zhang's tortious interference and New York law claims are DISMISSED without prejudice. Ms. Zhang's breach of contract, defamation, and intentional infliction of emotional distress claims against Ms. Nguyen are DISMISSED without prejudice only to the extent that they rely on the April email. Likewise, Ms. Zhang's defamation claim against Transpose is DISMISSED without prejudice only to the extent that it relies on the April email. The motions to dismiss are otherwise DENIED.

Signed May 29, 2024.

BY THE COURT

_____
David Barlow
United States District Judge

---

[104] ECF Nos. 60, 63.

19